IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JARED BAXTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 123-062 |
| | ) | |
| WALTER BERRY, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner, an inmate at Baldwin State Prison, brings the above-styled petition for a writ of habeas corpus, through counsel, pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

A Richmond County grand jury indicted Petitioner with three counts of burglary, three counts of terroristic threats, one count of rape, one count of kidnapping, one peeping tom count. (Doc. no. 12-1.) A jury convicted Petitioner on all charges in February 2010. Baxter v. State, 765 S.E.2d 738, 739 (Ga. Ct. App. 2014). The trial court originally sentenced Petitioner to

---

[1]The Court **DIRECTS** the Clerk to substitute Walter Berry, the current Warden of Baldwin State Prison, as the proper Respondent. See Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Courts; Fed. R. Civ. P. 25(d).

consecutive sentences of twenty years imprisonment on each count of burglary and kidnapping, five years of imprisonment on each count of terroristic threats and peeping tom, and life without the possibility of parole on the rape charge.  (Doc. no. 12-2.)  Retained attorney Richard Allen represented Petitioner at trial.  (Doc. no. 12-1, p. 1; doc. no. 12-12, p. 28.)[2]

Retained attorney Brian Steel represented Petitioner post-conviction.  (Doc. no. 12-2, pp. 8, 23-24.)  After a hearing held October 16, 2012, the trial court denied the motion for new trial, (id. at 23; doc. no. 12-11, p. 155), and Mr. Steel filed a direct appeal, arguing (1) ineffective assistance of trial counsel with respect to (a) failing to object properly to the admission of evidence obtained from certain searches, and (b) failing to object to the admission of other crimes evidence; (2) insufficient evidence of asportation to support the kidnapping conviction; and (3) impermissible sentencing to life in prison without the possibility of parole for the rape conviction.  (Doc. no. 12-11, pp. 173-74.)  The Georgia Court of Appeals rejected all of Petitioner's arguments but for the impermissible sentence for the rape conviction, and the case was remanded for re-sentencing on that one count.  Baxter, 765 S.E.2d at 740, 743. On remand, the trial court sentenced Petitioner to life with the possibility of parole on the rape charge.  (Doc. no. 12-3.)

In its opinion, the Georgia Court of Appeals provided the following description of the evidence at trial:

> Viewed in the light most favorable to the verdict . . . the evidence shows that on June 29, 2008, the first victim woke up in her bedroom to find Baxter

---

[2]For ease of reference, the Court cites throughout this Report and Recommendation to the document and page number appearing at the top of each page of the record, as assigned by the Court's electronic filing system, CM ECF.

putting his hand on her mouth threatening to kill her if she screamed.  When she fought back, Baxter fled through the back door.  The victim called the police and left her apartment.  When she returned, she discovered that her television was missing.  The police later recovered the television in Baxter's apartment while executing a search warrant.

Less than a week later, Baxter forced his way into the apartment of the second victim.  He threatened to slit her throat if she screamed.  Baxter raped the victim, ejaculated on her back, and then made her take a shower.  The victim described her assailant as wearing a mask with eye holes cut out of it and a long-sleeved t-shirt.  Investigators found a similar mask and long-sleeved t-shirt in Baxter's storage closet.

On July 14, 2008, the third victim was watching television on her laptop. She heard a sound and went to check that the door was locked, when Baxter forced his way into her apartment, covered her mouth with his hand, and threatened to slit her throat.  Baxter told the victim to remove her shirt, but she fought him and he retreated.  The victim described her assailant as wearing a black ski mask with white stripes above the eyes, the same kind of mask found in Baxter's storage closet.

A few days later, the sheriff's office set up a surveillance operation at the apartment complex.  At around 5:20 in the morning, a deputy saw an individual, who was later identified as Baxter, drive up and park in a bright blue Saturn, take a black, cloth object from the trunk of the car, and place it in his back pocket.  Baxter looked into the back window of an apartment.  He heard a noise, thought someone had seen him peeping into the window, and fled in his car, pursued by two undercover Richmond County deputies.  Baxter was eventually stopped in South Carolina.  Baxter admitted looking into the window, but he said he was spying on his girlfriend.  But his girlfriend did not live in that apartment; instead that apartment belonged to the fourth victim.

Baxter testified at trial.  He admitted being a peeping tom and admitted peeping into the window of the fourth victim.

Baxter, 765 S.E 2d at  739-40.

Petitioner, through counsel, filed a state habeas corpus petition on December 4, 2015, in Chattooga County, raising ineffective assistance of trial and appellate counsel based on Mr. Allen's failure to object to the rape victim's in-court identification of Petitioner and Mr. Steel's failure to raise the same in the motion for new trial or on appeal.  (Doc. no. 12-4, p. 5.)  The

state habeas court conducted evidentiary hearings on May 15, 2019, and October 27, 2021, (doc. no. 12-9, p. 1; doc. no. 12-12, p. 1), and denied relief in a Final Order filed on June 15, 2022, (doc. no. 12-5).  The Georgia Supreme Court denied a certificate of probable cause to appeal ("CPC") without comment.  (Doc. no. 12-7, <u>Baxter v. Brooks</u>, No. S22H1229 (Ga. Apr. 18, 2023).)

Petitioner then timely filed the above-captioned § 2254 petition, through counsel, again raising a claim of ineffective assistance of trial and appellate counsel based on Mr. Allen's failure to object to the rape victim's in-court identification of Petitioner and Mr. Steel's failure to raise the same in the motion for new trial or on appeal.  (Doc. no. 1, pp. 5-12.)  Respondent argues federal relief should be denied because the state habeas court's decision on the merits of the same ineffective assistance of counsel claim now raised in the federal petition deserves deference.  (<u>See</u> doc. nos. 11, 11-1.)

## II.   STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y,

Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013).  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.").  "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . .  Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.   DISCUSSION

As explained in detail below, applying AEDPA deference to the ineffective assistance of counsel claim rejected by the state habeas court, federal habeas corpus relief is not warranted.

A.    **Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way." Philmore v McNeil, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691.  Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc)).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).  Strickland requires application of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily

take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Khan v. United States, 928 F.3d 1264, 1273 (11th Cir. 2019) (citation omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512). "The reasonableness of counsel's performance is evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances . . . ." Michael v. Crosby, 430 F.3d 1310, 1319 (11th Cir. 2005) (citations omitted).

As emphasized by the Eleventh Circuit:

[D]eferential review under Strickland does not ask whether counsel could possibly or ideally have been more effective. "The test for ineffectiveness is not whether counsel could have done more." We do not ask whether an attorney's representation "deviated from best practices or common custom," and we should resist the temptation to second-guess an attorney with the benefit of our hindsight. Rather, Strickland asks only "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." . . . We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances.

Jenkins v. Comm'r, Ala. Dep't of Corr., 963 F.3d 1248, 1269-70 (11th Cir. 2020) (internal citations omitted), cert. denied, Jenkins v. Dunn, 141 S. Ct. 2635 (U.S. 2021).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.

. . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Dell v. United States, 710 F.3d 1267, 1273 (11th Cir. 2013), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore, 575 F.3d at 1264 (explaining appellate counsel not required to

raise every non-frivolous issue).  Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'"  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).  Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review.  Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.  Prejudice turns on whether "'the neglected claim would have a reasonable probability of success on appeal.'"  Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020) (citing Philmore, 575 F.3d at 1265).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner."  Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable").  "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly."  Bell, 535 U.S. at 699.  "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

"Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the

question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard." <u>Richter</u>, 562 U.S. at 105.  Stated otherwise, federal habeas corpus relief is available on a <u>Strickland</u> claim "only if the state habeas court *unreasonably* determined that trial counsel performed reasonably - *i.e.*, where there is no possibility fairminded jurists could disagree that defense counsel acted outside the range of professionally competent assistance. . . ." <u>Ledford v. Warden, Ga. Diagnostic Prison</u>, 975 F.3d 1145, 1158 (11th Cir. 2020) (internal quotation marks and citations omitted), *cert. denied*, 141 S. Ct. 2832 (U.S. 2021).  For Petitioner "to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." <u>Raheem v. GDCP Warden</u>, 995 F.3d 895, 909 (11th Cir. 2021).

"Surmounting <u>Strickland's</u> high bar is never an easy task." <u>Richter</u>, 562 U.S. at 105 (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010)).  Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." <u>Richter</u>, 562 U.S. at 105 (quotation marks and citations omitted); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 578 U.S. 113, 117 (2016) (*per curiam*) (internal quotations and citations omitted).

To summarize, for Petitioner to obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement."  Id.  That is, if fairminded jurists could reach differing conclusions, this Court owes deference to the state court decision, and federal relief is not available.  Shinn v. Kayer, 592 U.S.-, 141 S. Ct. 517, 525 (2020) (per curiam).  "Or, in more concrete terms, a federal court may grant relief only if every 'fairminded juris[t]' would agree that every reasonable lawyer would have made a different decision."  Dunn v. Reeves, 594 U.S. -, 141 S. Ct. 2405, 2411 (2021) (per curiam) (emphasis in original) (citation omitted).  "The Strickland standard is a general one, so the range of reasonable applications is substantial."  Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 585 U.S.-, 138 S. Ct. 2555, 2560 (2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); Woods, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

**B.    The State Court's Application of <u>Strickland</u> to Petitioner's Ineffective Assistance of Trial and Appellate Counsel Claim Was Not Objectively Unreasonable**

Petitioner argues in his federal habeas corpus petition, as he did in his state habeas corpus petition, that he received constitutionally ineffective assistance of counsel because trial counsel Mr. Allen did not "properly object to the in-court identification of [Petitioner] as the assailant and appellate counsel [Mr. Steel] failed to properly preserve and raise that issue at the motion for new trial and on appeal."  (Doc. no. 1, p. 7.)  The state habeas court rejected Petitioner's ineffective assistance claim, concluding Petitioner had not shown Mr. Allen

performed deficiently, and because Mr. Allen did not perform deficiently, Mr. Steel did not provide ineffective assistance by failing to raise on appeal this non-meritorious issue about Mr. Allen's performance.  (See doc. no. 12-5, pp. 6-12.)   The Georgia Supreme Court denied the request for a CPC in a two-sentence order:  "Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied.  All the justices concur." (Doc. no. 12-7.)  Because the state supreme court decision did not come accompanied with reasons, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable. Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018).  The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court's reasoning, as it is the last state court to decide Petitioner's federal ineffective assistance of counsel claim in a reasoned opinion.  See Wilson, 138 S. Ct. at 1192.  As discussed below, the state habeas court correctly identified and applied the Strickland analysis to determine Petitioner did not show trial or appellate counsel's performance was deficient.

### 1.    Background

Retained counsel Mr. Allen earned his law degree at Emory Law School in 1966 and worked at a law firm, where he made partner, until he ran for the position of District Attorney

in the Augusta Judicial Circuit in 1972.  (Doc. no. 12-12, p. 27.)  Mr. Allen served two terms as the District Attorney, after which he went into private practice.  (Id.)  The bulk of Mr. Allen's work after he returned to private practice was criminal defense and domestic relations. (Id. at 27-28.)  Prior to representing Petitioner, Mr. Allen had tried rape and peeping tom cases. (Id. at 28.)

Retained attorney Mr. Steel replaced Mr. Allen after trial and sentencing but before the motion for new trial proceedings.  (Id. at 8.)  As part of his representation, Mr. Steel read the trial transcript in search of issues that might form a valid basis for getting Petitioner "released from his convictions and sentences."  (Id. at 9.)  Mr. Steel testified at the state habeas hearing that eyewitness identification would be an important evidentiary issue at trial, (id. at 11), and he was familiar with the case law ruling that a suggestive identification procedure involving the government could provide a possible basis for suppressing or preventing the admission of that identification, (id. at 14.)  In his review of the trial transcript, Mr. Steel did not "pick up" on the importance of a potential tainted in-court identification of Petitioner by the rape victim based on her statement she had seen Petitioner's eyes at some point between the time of the rape and her testimony at trial.  (Id. at 15-16.)  Mr. Steel testified he should have further investigated the circumstances of when the victim had seen Petitioner, but he "did not because I was trying to get the best issue before the appellate court and the trial court."  (Id. at 17.)  Mr. Steel further acknowledged he had no idea what, if any, proceeding or event occurred on September 2, 2008, the date the rape victim identified as when she saw Petitioner at "the indictment."  (Id. at 18-20.)

Retained counsel at the state habeas hearing, Mr. August F. Siemon, did not put up any evidence about the circumstances of the rape victim seeing Petitioner after the rape but before her testimony at trial.  Rather, he relied solely on the victim's testimony at trial regarding when she saw Petitioner:  "I went to – I guess it was the indictment on September 2nd."  (Doc. no. 12-9, p. 85.)   Petitioner's True Bill of Indictment was not returned by the Grand Jury Foreperson until October 14, 2008.  (Doc. no. 12-1, p. 1.)  The rape victim testified she was not shown a photo lineup during the investigation of the case.  (Doc. no. 12-9, p. 84.)  There is nothing anywhere in the record explaining what happened on September 2, 2008, involving the rape victim and Petitioner, or the circumstances under which the victim may have observed Petitioner prior to her trial testimony.

### 2.      Analysis

Petitioner argues Mr. Allen should have objected to the rape victim's in-court identification of Petitioner as her assailant, and Mr. Steel should have raised Mr. Allen's failure to do so in the motion for new trial and on appeal.  The state habeas court determined Petitioner had not shown deficient performance by Mr. Allen because there was no showing "there was an out-of-court identification procedure orchestrated by the State that could have tainted the victim's in-court identification."  (Doc. no. 12-5, p. 10.)  The victim was extensively cross-examined about her description of the assailant, and the accuracy and credibility of the victim's in-court identification was, in accordance with Georgia law, left to the jury.  (Id. at 8-12 (collecting cases, including Ralston v. State, 309 S.E.2d 135, 136-37 (Ga. 1983) and Sanford v. State, 485 S.E.2d 233, 234-35 (Ga. Ct. App. 1997).)  Because the state court determined Mr. Allen had not performed deficiently in failing to object to the in-court identification, it did not

conduct the prejudice analysis under Strickland, and likewise determined Mr. Steel did not provide ineffective assistance based on his failure to raise a non-meritorious issues. (Id. at 12.) Petitioner fails to show error in the state habeas decision rejecting this claim that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods, 575 U.S. at 316.

Because Petitioner is challenging a state court ruling that rests on findings of fact, he must clear two hurdles of rebutting with "clear and convincing evidence" the presumption of correctness that attaches to the findings of fact and overcoming the deference owed to the state court's legal decision. See Whatley v. Warden, Ga. Diagnostic & Classific. Ctr., 927 F.3d 1150, 1175 (11th Cir. 2019). Moreover, even though Petitioner's current ineffective assistance claim is one of constitutional dimension, this Court should "defer to the state's construction of its own law" when the federal ineffective assistance claim is based on counsel's failure to raise an issue of state law. Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1295 (11th Cir. 2017); see also Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."). Therefore, when considering under the current circumstances "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard," Pinkney, 876 F.3d at 1295, the Court presumes the state habeas court knows, and correctly applied, Georgia law. Moreover, Petitioner had the burden of proof on his claims and to complete the habeas record with the relevant records from trial. Holt v. Ebinger, 814 S.E.2d 298, 301 (Ga. 2018).

The state habeas court recounted the rape victim's identification testimony as follows:

Q:    Okay. What other sort of description of the person who did this were you able to provide?

16

A:      He had very blue eyes, the bluest eyes I'd ever seen.

 . . . .

Q:      Do you recall whether or not you were shown a photo lineup at some point during the investigation of the case?

A:      I was not.

Q:      If you had been shown a photo lineup, would you have been able to pick out the person's face?

A:      All I saw was the eyes.

Q:      So all you could see was eyes.  But you couldn't see any facial features or anything like that?

A:      I saw a little bit of the eyebrows and they were light brown.

Q:      Were you able to tell - - I mean based on what you could see, could you tell if this was a white male or a black male?

A:      It was - - it was a white male.

Q:      As you look over at the Defendant today, can you say whether or not he was the person who attacked you?

A:      I feel in my heart of hearts that yes, that is him, by his eyes.

Q:      So based on his eyes; and that's really all you could see?

A:      Eyes, height, body build.  There's nothing about him that exempts him from being him, in my heart of hearts.

Q:      Have you ever had a chance to see his eyes before today?

A:      I saw his eyes that night and now.

Q:      So not between then and now?

A:      I went to - - I guess it was the indictment on September 2nd.

(Doc. no. 12-5, pp. 7-8 (citing doc. no. 12-9, pp. 79, 84-85)).)

Petitioner argues that as the victim did not have an opportunity to view her rapist

because he wore a mask, her vague description of the rapist's clothing, and the two months

between the rape and "her being shown what obviously must have been a photograph of Mr. Baxter, because as stated she testified that she was never shown a lineup, the identification 'at the indictment' was suggestive." (Doc. no. 1, p. 10.)  Petitioner contends the state habeas court based its ruling on contradictory findings of fact when it ruled there was no evidence showing what occurred on September 2, 2008, that would have allowed the victim to see to see Petitioner, but then also citing the victim's testimony that she saw Petitioner's eyes when she went to the indictment on September 2nd.  (Id. (citing doc. no. 12-5, pp. 8-9).)  According to Petitioner, there was no evidence to support the state court's "speculation" about other opportunities the victim might have had to see Petitioner because Respondent did not put up any "evidence to refute the clear and unambiguous testimony of the victim" that she saw Petitioner at the indictment.  (Id. at 11.)  Petitioner's arguments fail for multiple reasons.

First, the victim's testimony that she "guessed" she saw his eyes at the September 2nd indictment is far from clear and unambiguous.  As even Mr. Steel conceded during his testimony at the state habeas hearing, the victim could have seen Petitioner under any number of circumstances:  on a news report, a fluke encounter at the jail, during the government presentation at the grand jury, or at a preliminary hearing or initial appearance.  (Doc. no. 12-12, pp. 16-18; see also doc. no. 12-5 (recounting chronology of case and possible circumstances under which victim may have seen Petitioner and concluding nothing about victim's testimony *requires* a finding that she was shown a photograph on September 2nd).) Indeed, the uncertainty surrounding the circumstances of when the victim might have seen Petitioner is highlighted by the fact that the True Bill was not returned until October 14, 2008,

over one month after the rape victim guessed she saw Petitioner at "the indictment."  (Doc. no. 12-1, p. 1.)

Second, even assuming the victim saw Petitioner on September 2nd, there is nothing in the record establishing the State had anything to do with orchestrating the circumstances under which she saw him.  The case law is well-settled "that admission of evidence in state trials is ordinarily governed by state law, and the reliability of relevant testimony typically falls within the province of the jury to determine."  Perry v. New Hampshire, 565 U.S. 228, 232 (2012). However, there is also "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime."  Id.  Importantly, "[w]hen no improper law enforcement activity is involved . . . it suffices to test reliability through the rights and opportunities generally designed for that purpose [including]  . . . vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." Id. at 233; United States v. Elliot, 732 F.3d 1307, 1310 (11th Cir. 2013) ("[W]hen no improper law enforcement activity is involved, exclusion of eyewitness identification is unnecessary."); United States v. Whatley, 719 F.3d 1206, 1216 (11th Cir. 2013) ("Perry makes clear that, for those defendants who are identified under suggestive circumstances *not* arranged by police, the requirements of due process are satisfied in the ordinary protections of trial.")

Petitioner presented no evidence at the state level, or now, to suggest, let alone establish, the State had anything to do with orchestrating whatever occurred on September 2nd that resulted in the rape victim seeing Petitioner.  Thus, Petitioner's reliance on case law in

which the police showed a witness a photograph of the defendant is inapposite and does not support his contention that a due process "totality of the circumstances" test should be applied to determine whether there was a substantial likelihood of the victim misidentifying Petitioner. (Doc. no. 1, pp. 8-9 (citing Manson v. Brathwaite, 432 U.S. 98, 113-14 (1977), Walker v. State, 763 S.E.2d 704, 708-09 (Ga. 2014), and State v. Hattney, 610 S.E.2d 44, 45 (Ga. 2005).)

As the state habeas court explained, the victim's in-court identification here was not governed by the "totality of circumstances" test for reliability of extra-judicial pretrial identification procedures such as lineups and photographic displays but rather by "the same rules of evidence, witness credibility, and cross-examination as all testimony in a criminal trial." (Doc. no. 12-5, p. 8 (citing Ralston v. State, 309 S.E.2d 135, 136-37 (Ga. 1983).)  The state court went on to cite with approval Sanford v. State, 485 S.E. 2d 233, 234 (Ga. Ct. App. 1997), as an example where an in-court identification of a defendant singled out as sitting at the defense table is admissible even where the victim is unable to positively identify a defendant prior to trial because a witness is able to state an opinion the defendant was the perpetrator, subject the jury's evaluation of credibility – as the jury evaluates all opinion evidence.  (Doc. no. 12-5, p. 8.)  As the Georgia Court of Appeals explained in Sanford, even though the rape victim was unable to provide a positive identification of her attacker, she could state facts within her knowledge that were sufficient to support the opinion about the rapist's identity:  "The jury, as in cases of opinion evidence, could have said either that we, upon the consideration of the facts detailed by you upon which you base your opinion, do not accept that opinion and will, therefore, disregard it, or that we will give it credence."  Sanford, 485 S.E.2d at 234.

The state court also collected multiple Georgia cases, (doc. no. 12-5, pp. 11-12), in which witnesses or victims were permitted to state an opinion on the identity of a perpetrator even where the individuals were unable to provide positive identification of the defendant. See, e.g., Dawson v. State, 658 S.E.2d 755, 760-61 (Ga. 2008) (explaining when witnesses or victims cannot positively identify the defendant as the perpetrator, the individuals may so state an opinion as to the defendant's identity, provided they state the facts within their knowledge upon which the opinion is based); Garrett v. State, 234 S.E.2d 161 (Ga. Ct. App. 1977) (explaining witness may testify as to opinion that defendant was a thief where factual basis for opinion made known but jury decides weight and credit due that opinion). The state habeas court then concluded, as did the court in Sanford, (485 S.E.2d at 234-35), that because the rape victim's identification testimony was admissible as opinion evidence, there was no valid objection to be made, and therefore, no showing of deficient performance by Mr. Allen for failing to object.[3] (Doc. no. 12-5, p. 12.)

The burden fell to Petitioner to put up evidence at the state habeas proceedings concerning the out-of-court circumstances under which the victim may have seen Petitioner that he believed made the in-court-identification impermissibly suggestive and/or to otherwise support his ineffective assistance claim on this point. See Holt, 814 S.E.2d at 301 (explaining petitioner had burden of proof on his claims and to complete the habeas record with the relevant records from trial). He put up nothing in the way of evidence and appears have to relied on his own speculation about possible State involvement in any out-of-court identification. (See

_____

[3]As explained above, this Court defers to the state court's interpretation of Georgia law on the matter of allowing in-court-identification as opinion evidence. Pinkney, 876 F.3d at 1295; Agan, 119 F.3d at 1549.

doc. no. 12-5, p. 9 ("Petitioner *assumes* the victim was shown a photograph during her testimony before the grand jury." (emphasis added).)  Even now in these federal proceedings, where he faces the high hurdle of a presumption of correctness of the state court's findings Petitioner offers nothing in the way of evidence about what happened on September 2, 2008, or the circumstances under which the rape victim may have seen him.  Accordingly, there is nothing to validly challenge, let alone overturn, the state court findings.  See Ingram v. Warden, Holman Corr. Facility, 80 F.4th 1304, 1313 (11th Cir. 2023) (explaining that under AEDPA the clear and convincing evidence necessary to challenge state court factual determination "consists of proof that a claim is 'highly probable'").

Because the determination on whether Petitioner received ineffective assistance of counsel is a mixed question of law and fact, and because the factual basis upon which the state court determination is based stands, the ultimate conclusion on ineffective assistance is not unreasonable under § 2254(d).  See id. at 1314.  All told, Petitioner has failed to establish Mr. Allen "took an approach that no competent lawyer would have chosen" concerning the in-court-identification.  This is particularly true when, as described above, state law allows opinion evidence on the identity of a perpetrator, and there was no evidence to establish the State had any hand in orchestrating whatever circumstances occurred on September 2nd, the victim's identification testimony was subject to vigorous cross-examination, (doc. no. 12-9, pp. 86-88, 90-91, 93), and the jury received explicit instructions on weighing witness credibility and the sufficiency of identifying Petitioner beyond a reasonable doubt as the perpetrator of the alleged crime, (doc. no. 12-10, pp. 185-88).  "The burden 'to show that counsel's performance was deficient' rests squarely on the defendant."  Burt v. Titlow, 571

U.S. 12, 22-23 (2013).  Nothing before this Court shows Mr. Allen – a former District Attorney for the Augusta Judicial Circuit and seasoned defense attorney - was deficient in failing to lodge a meritless objection to the in-court identification by the rape victim.

As Mr. Allen's performance was not deficient, the Court need not address the second, prejudice prong of Strickland.  However, for the sake of completeness, and conducting its own *de novo* review because the state court did not address prejudice, Sears v. Warden GDCP, 73 F.4th 1269, 1280 (11th Cir. 2023) (*per curiam*), the Court comfortably concludes that Petitioner has not shown the outcome of the trial would have been different had Mr. Allen not failed to object to the in-court-identification.  See Strickland, 466 U.S. at 694.  As discussed extensively above, there was no valid basis to object.  Failing to raise a meritless objection would not have change changed the trial's outcome, and therefore, there was no prejudice to Petitioner from Mr. Allen's failure to object on this point.

As Mr. Allen did not provide ineffective assistance on this in-court-identification issue, Mr. Steel did not provide ineffective assistance for failing to raise a meritless issue on appeal. See Nyhuis, 211 F.3d at 1344 ("Appellate counsel is not ineffective for failing to raise claims 'reasonably  considered to be without merit.'"); see also Hawes v. Perry, 633 F. App'x 720, 725 (11th Cir. 2015) (*per curiam*) (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990) for proposition that "ineffective-assistance-of-appellate-counsel claim  that challenges the failure to bring a claim can be successful only if there is a reasonable probability that the omitted issue would have affected the outcome").

In sum, the state court's decision to reject Petitioner's ineffective assistance of trial and appellate counsel claim was not an unreasonable application of Strickland or based on an

unreasonable determination of the facts in light of the evidence presented. Mr. Allen's representation of Petitioner was not deficient when he failed to challenge the rape victim's in-court identification as tainted by a suggestive out-of-court identification procedure, and Mr. Steel's representation was not deficient by failing to raise a meritless ineffective assistance claim against Mr. Allen on this issue. Therefore, Petitioner is not entitled to federal habeas corpus relief.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 28th day of November, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA